



RECEIVED
CVK
3/30/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| TIMOTHY J. DEAN,<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF EDUCATION OF THE CITY OF CHICAGO,<br><br>    Defendant | **1:26-cv-03535**<br>**Judge Edmond E. Chang**<br>Case No.: **Magistrate Judge Albert Berry, III**<br>**RANDOM/Cat. 2**<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND RELATED CLAIMS AND DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. Plaintiff has worked in Special Education for more than 20 years. Tirelessly providing support, mentorship and guidance to students with special needs.

2. The Plaintiff suffers from a permanent, degenerative spinal disorder, which has been medically documented and substantially aggravated by repeated workplace injuries. This condition causes structural instability and neurological symptoms, including pain and limited mobility, that substantially limit major life activities such as walking, standing, and lifting. The cumulative effect of these injuries has resulted in lasting physical restrictions, making standard job duties hazardous to the Plaintiff's health and necessitating reasonable accommodations under the ADA.

3. This lawsuit alleges a pattern of disability discrimination and retaliation by the

employer in violation of the Americans with Disabilities Act (ADA). The employer repeatedly disregarded the Plaintiff's rights by failing to provide legally mandated reasonable accommodations, despite clear medical documentation of limitations. This willful failure to accommodate, coupled with retaliatory actions taken after the Plaintiff asserted their rights, caused significant harm. The complaint seeks to hold the employer accountable for these violations.

## II. JURISDICTION

4. Subject Matter Jurisdiction: This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims presented arise under the Americans With Disabilities Act.

5. Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because the defendant(s) reside in or have committed acts within the Northern District of Illinois that give rise to the claims in this action. Furthermore, the defendant(s) have sufficient minimum contacts with the Northern District of Illinois to satisfy due process under the United States Constitution, thereby rendering the exercise of jurisdiction by this Court fair and reasonable.

## III. PROCEDURAL BACKGROUND

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the claims described herein. Plaintiff received a Notice of Right to Sue from the EEOC on December 29, 2025. This Complaint is filed within 90 days of receipt of that Notice, in accordance with 42 U.S.C. § 2000e-5(f)(1).

## IV. PARTIES

6. Plaintiff: Timothy J. Dean, an individual, is a resident of the State of Illinois,

residing at 2725 N. Saint Louis Ave. Apt 2, Chicago, IL 60647.

7. Defendant: Board of Education of the City of Chicago, a body corporate and politic operating under the laws of the State of Illinois, with its principal place of business located at 1 North Dearborn Street, Law Department, Suite 900, Chicago, Illinois 60602.

## V. GENERAL ALLEGATIONS

8. Plaintiff began employment with Chicago Public Schools as a Special Education Classroom Assistant in August of 2022 and was assigned primarily to the Inclusion department of Special Education at his work site.

9. Prior to beginning employment, Plaintiff suffered from a permanent spine condition and was under medical restrictions which included a 50 pound lifting limit, with 50 pounds to only be approached occaisonally and no bending through the lumbar spine.

10. Chicago Public Schools was made aware of Plaintiff's work restrictions via email to HR and the ADA office with a doctor's note attached during the spring of 2023.

11. In August of 2023, just prior to the start of the school year, Plaintiff's supervisor communicated that Plaintiff's job assignment was being switched from Inclusion to Cluster, a more physically demanding area of Special Education.

12. Plaintiff, soon after receiving the re-assignment, provided his supervisor with his work restrictions as stipulated by his doctor. Despite other younger and able-bodied male SECAs being available, the supervisor declined to switch Plaintiff back to Inclusion.

13. Plaintiff submitted a signed ADA accommodation request application to the ADA office of Chicago Public Schools in August of 2023. The accommodation requests included a 50 pound lifting limit, only lifting up to 50 pounds occasionally, no bending

through the lumbar spine, and no standing for extended periods without being able to sit.

14. On August 17, 2023, the ADA office sent an email acknowledging receipt of the ADA accommodation request application.

15. During the first few days of school starting on or after August 21, 2023, Plaintiff was directed by teachers more than once to take an assigned student for direct care/toileting, which required lifting the student onto a changing table.

16. In September of 2023, Plaintiff submitted the required medical certification for the ADA request.

17. On September 19, 2023, ADA office investigator Stephanie Sanchez emailed Plaintiff asking to confirm the requests as she listed them, incorrectly listing the lifting request as "To not lift more than 50lbs (only occasionally)".

18. Plaintiff responded on September 21, 2023, clarifying the weight limit set by his doctor as 50 pounds never more, with the added stipulation that 50 pounds only be approached occasionally. The request also fell in line with the physical requirements of the job description which listed, must be able to exert up to 50 pounds of force occasionally.

19. Ms. Sanchez responded thanking Plaintiff for his respones on September 22, 2023, asking for the duration of the request, to which Plaintiff replied that the request is permanent due to his medical condition.

20. On September 26, 2023, Ms. Sanchez issued a determination letter denying the lifting and bending accommodation requests, while granting the sitting request but attaching a confusing stipulation to it. Furthermore, Ms. Sanchez kept her incorrect version of Plaintiff's lifting accommodation request, listing it in the determination letter.

4

21. On October 6, 2023, Plaintiff received an email from a teacher, not his supervisor, and not a teacher he worked with in the classroom, stating that Plaintiff's 4th period assignment was being switched, and that he would be providing lunch support for a different student. During this assignment, Plaintiff's lumbar spine became injured due to having to physically redirect the teenage male student repeatedly.

22. Plaintiff filed an injury report via email later that day on October 6, 2023.

23. Plaintiff sought medical treatment on or around October 10, 2023, due to progression of injury symptoms.

24. After the work injury, Plaintiff made multiple attempts to take FMLA in October 2023, which were interfered with and denied by the employer.

25. Plaintiff filed for workers' compensation on October 16, 2023, which was approved around November 7, 2023.

26. On November 7, 2023, Plaintiff's union, SEIU Local 73 filed a grievance on Plaintiff's behalf regarding the ADA denial.

27. On December 7, 2023, a grievance hearing date was set for December 19, 2023, by Chicago Public Schools.

28. On December 14, 2023, the employer's insurance company, CCMSI, sent their Independent Medical Examination (IME) report to Plaintiff's doctor. Plaintiff's doctor did not agree with the IME report's assessment of Plaintiff's work fitness and issued updated work restrictions to the employer's nurse case manager so that there was no confusion about Plaintiff's physical condition.

29. On December 18, 2023, Plaintiff received emails from both the work comp insurance claim adjuster and the Chicago Public Schools HR claims analyst informing

5

that Temporary Total Disability (TTD) benefits were terminated. The notice that the CPS claims analyst sent to Plaintiff included Absent Without Official Leave (AWOL) language while instructing plaintiff to return to work in less than 24 hours while still injured.

30. On December 19, 2023, Plaintiff reported to work still experiencing significant pain due to his spine injury. Plaintiff met with his supervisor, who reviewed the new medical restrictions. However, the supervisor reiterated that Plaintiff would be required to participate in the field trip despite these medical restrictions some of which were; occasional standing and walking, frequent sitting. Plaintiff also raised the issue of the grievance hearing, explaining to the supervisor that the hearing concerned the denial of accommodations under the ADA. The supervisor expressed indifference. On the field trip, Plaintiff's spine was re-injured due to the excessive standing and walking of the job assignment, and his ADA accommodation not always being available.

31. Between December 19 and December 22, 2023, Plaintiff verbally reported the further injury to his spine from the field trip, twice to his supervisor for the purpose of injury documentation. The supervisor initially responded to the effect that she didn't know how she could log the injury because the Plaintiff had not reported a fall. Plaintiff reported that he started to experience a significant elevation in lower back pain correlating to the length of time he was up on his feet.

32. On December 20, 2023, Plaintiff was unable to report to work at the normal time due to lingering elevated symptoms from the prior day's injury.

33. On January 11, 2024, a cluster teacher assigned the Plaintiff to provide job coaching to a student. During this supervision, the student physically engaged with the

Plaintiff in a manner that aggravated Plaintiff's spine injury. The Plaintiff did not immediately report the injury. Plaintiff filed a delayed injury report later within work comp guidelines.

34. On March 15, 2024, in an email during the ADA interactive process, Ms. Sanchez stated: "Please be advised your condition is considered as a temporary/Non-ADA condition and the ADA Office is reviewing your request as a courtesy."

35. On March 29, 2024, Plaintiff emailed Ms. Sanchez clarifying for her that his condition and disability are not temporary, and further explains the reason why he requires accommodations.

36. In April 2024, ADA analyst Shunna Williams took over from Ms. Sanchez.

37. On April 5, 2024, Plaintiff's physician provided updated medical certification reflecting ongoing medical restrictions and the continuing nature of Plaintiff's condition.

38. On April 8, 2024, the updated medical certification was provided to Defendant's ADA office.

39. On April 8, 2024, the employer denied the Plaintiff's grievance as vague.

40. On April 10, 2024, Shunna Williams emailed "At this time, we will issue a Determination Letter to resolve the issue."

41. On May 8, 2024, Shunna Williams issued the determination letter. Denied Occasional standing and walking request. Denied 1 pound lifting pushing pulling request. Partially granted no bending if operationally feasible. Frequent sitting was granted on a trial basis. Stipulated that the accommodations expire in June.

42. On or around August 2024, Plaintiff requested ADA accommodations for the new school year. Requested sitting when needed. 1 pound lifting, pushing pulling limit,

and no twisting bending.

43. On September 13, 2024, Ms. Sanchez issued an ADA determination granting sitting when needed when operationally feasible, and denied 1 pound lifting pushing pulling request and denied no twisting and bending request.

44. In November of 2025, the EEOC issued a determination of probable cause against Employer. (Exhbit 1)

### VI. CAUSES OF ACTION

### Count One: Disability Discrimination in Violation of the Americans with Disabilities Act (ADA), Specifically for Denial of Reasonable Accommodations

44. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

45. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act (ADA), as he suffers from a permanent spine condition which substantially limits one or more of his major life activities.

46. Defendant is an employer covered under the ADA.

47. Plaintiff provided Defendant with notice of his disability and submitted a formal request for reasonable accommodations that were consistent with his medical restrictions.

48. Defendant received and acknowledged Plaintiff's request for accommodations through communications from the ADA office, including an email dated August 17, 2023, confirming receipt of the ADA accommodation request application.

49. Despite Plaintiff's clear and reasonable accommodation requests, Defendant failed to make the necessary accommodations. Specifically, on or after August 21, 2023,

Plaintiff was instructed to perform tasks that involved lifting a student onto a changing table, directly contradicting his medical restrictions.

50. Defendant engaged in a pattern of denying Plaintiff's reasonable accommodation requests, as evidenced by the ADA office's determination letter dated September 26, 2023, which incorrectly listed and subsequently denied Plaintiff's lifting accommodation and imposed confusing stipulations on the granted sitting accommodation.

51. Defendant's failure to accommodate Plaintiff's disability resulted in direct harm to Plaintiff, including a significant injury to his lumbar spine on October 6, 2023, when he was required to engage in physical redirection of a student, further aggravating his pre-existing spine condition.

52. Defendant failed to engage in a good-faith interactive process as required under the ADA, as evidenced by ongoing communication failures and mischaracterization of Plaintiff's accommodation needs by the ADA office, culminating in the denial of essential accommodations in a determination letter issued on May 8, 2024.

53. Defendant continued to deny Plaintiff's accommodation requests during the relevant period, without providing valid justification.

54. As a direct and proximate result of Defendant's refusal to provide reasonable accommodations, Plaintiff suffered and continues to suffer severe physical pain, emotional distress, and economic losses, including but not limited to lost wages and benefits, as well as a diminished capacity to engage in daily activities and work.

55. It should be noted that after the initial ADA denial the ensuing October 6, 2023 spine injury progressed Plaintiff's spine condition to the point of needing medical

restrictions that were no longer compatible with his job duties. Yet the Defendant never reached out to re-assign, him or move to place him back on TTD.

**Count Two: Retaliation in Violation of the Americans with Disabilities Act (ADA)**

56. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

57. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations for his disability and opposing Defendant's failure to accommodate his medical restrictions.

58. Defendant was aware of Plaintiff's protected activity, including his formal requests for accommodations and communications with the ADA office.

59. Following Plaintiff's protected activity, Defendant subjected Plaintiff to adverse actions, including but not limited to requiring Plaintiff to perform duties that directly conflicted with his medical restrictions, failing to accommodate his disability, and engaging in conduct that interfered with Plaintiff's ability to exercise his rights.

60. Defendant's actions would dissuade a reasonable employee from engaging in protected activity under the ADA.

61. There is a causal connection between Plaintiff's protected activity and Defendant's

adverse actions, as evidenced by the timing and pattern of conduct following Plaintiff's accommodation requests.

62. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff suffered physical injury, emotional distress, and economic losses, including lost wages and benefits.

63. Defendant's conduct was intentional, willful, and in reckless disregard of Plaintiff's rights under the ADA.

WHEREFORE, Plaintiff respectfully requests the relief set forth above.

### VII. DEMAND

WHEREFORE, Plaintiff respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant from continuing to violate the Americans with Disabilities Act by failing to provide reasonable accommodations;

D. Award Plaintiff economic damages for back pay and benefits, including the value of used sick and personal days, for the period of October 10, 2023, through December 18, 2023, in an amount to be determined at trial, plus pre-judgment interest on all lost wages and benefits from the date of the violation;

E. Award Plaintiff compensatory damages in the amount of $120,000 for physical pain and suffering, mental anguish, emotional distress, and loss of quality of life resulting from Defendant's discriminatory actions;

F. Award Plaintiff punitive damages in the amount of $120,000, to the extent allowed by law, based on Defendant's willful, malicious, or reckless disregard of Plaintiff's rights under the ADA;

G. Declare that Defendant violated the ADA during the period covered by the EEOC charge;

H. Award Plaintiff reasonable attorney's fees, expert witness fees, and all litigation costs pursuant to 42 U.S.C. § 12205;

I. Award Plaintiff such other relief that the Court deems just and proper.

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Dated: March 30, 2026

Respectfully Submitted,

ATTORNEY NAME:        Timothy J. Dean

Law Firm Name        2725 N. Saint Louis Ave, Apt 2

Address City, ST ZIP Code  Chicago IL, 60647

Phone: (312) 869-4057

Fax:

Email: tdean1976@yahoo.com